UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
SECURITIES AND EXCHANGE COMMISSION, )
                                    )
                  Plaintiff,        )
                                    )
            v.                      )   Civil Case No. 07-1397
                                    )   (RWR)
CAROLE ARGO,                        )
                                    )
                  Defendant.        )
_____)

**JOINT REPORT PURSUANT TO FED. R. CIV. P. 26(f) AND LCvR 16.3**

Pursuant to the provisions of Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 16.3(d), and the Court's Order for Initial Scheduling Conference, dated August 27, 2007, plaintiff, the Securities and Exchange Commission ("the Commission") and defendant, Carole Argo ("Argo"), hereby submit this Joint Report.

**I.      STATEMENT OF THE CASE**

This case involves the Commission's claims that between October 2000 and October 2005, Argo, formerly the president, chief operating officer ("COO") and chief financial officer ("CFO") of SafeNet, Inc. ("SafeNet"), participated in a fraudulent scheme to backdate option grants without causing SafeNet to record a compensation expense for those option grants, as required by Generally Accepted Accounting Principles ("GAAP").  The Commission claims that as a direct result of this backdating scheme, Argo allegedly caused SafeNet to report materially

misstated financial results for at least the period from the fourth quarter of 2000 through the second quarter of 2006.

The Commission's case is premised on the assertion that in order to comply with Generally Accepted Accounting Principles ("GAAP") concerning stock options, companies such as SafeNet were required to record an expense for the "intrinsic" value of stock options granted to employees on the options' "measurement date." The measurement date is the date upon which the company has determined the exercise price of the option, the number of options, and the name of the option recipient. A stock option has intrinsic value if the exercise price of the option is lower than the market price of the underlying stock on the measurement date–commonly referred to as an "in-the-money" option. GAAP requires a company that grants an employee "in-the-money" options to recognize the compensation expense associated with those options as an expense in its income statement.

The Commission alleges that although SafeNet routinely granted its employees in-the-money options, Argo knowingly or recklessly failed to cause SafeNet to record the attendant compensation expenses. The Commission claims that in furtherance of the scheme, Argo routinely looked back and selected historical dates when SafeNet's stock price had closed at or near the low for a given period to use as grant dates for SafeNet option grants. The Commission further asserts that by selecting these highly favorable dates and causing options to be granted on dates when she knew they would be in-the-money, Argo created an opportunity for herself and others at SafeNet to reap substantial profits. The Commission alleges that Argo then backdated documents to conceal from SafeNet's investors and outside auditors that SafeNet was issuing in-

the-money option grants. The Commission claims that Argo, as well as other employees, officers and directors reaped substantial profits and other financial benefits from this scheme.

The Commission claims that, in connection with the alleged scheme, from at least the fourth quarter of 2000 through the second quarter of 2006, Argo allegedly prepared and/or reviewed proxy statements, periodic reports, and Securities Act registration statements that she knew, or was reckless in not knowing, contained materially false and misleading statements and omissions concerning SafeNet's financial condition and options-granting practices. The Commission claims that these statements created the false impression that SafeNet did not grant in-the-money options to its employees and was properly accounting for its options grants. The Commission further contends that, because SafeNet was not properly accounting for the in-the-money options it granted, from the fourth quarter of 2000 through the second quarter of 2006, SafeNet's proxy statements, periodic reports, and Securities Act registration statements allegedly misled investors because they materially understated the Company's compensation expenses and materially misstated its net income or loss, and earnings per share**.**

Argo has filed an Answer in which, upon the advice of counsel, she asserted her Fifth Amendment privilege against self-incrimination with respect to the material allegations of the Complaint.

## II.     STATUTORY BASIS FOR CAUSES OF ACTION

This is a civil enforcement action in which the Commission seeks disgorgement, civil penalties, and injunctive relief arising out of Argo's alleged violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Sections 10(b), 13(b)(5), 14(a)

and 16(a) of the Securities and Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78m(b)(5), 78n(a) and 78p(a)] and Exchange Act Rules 10b-5, 13a-14, 13b2-1, 13b2-2, 14a-9 and 16a-3 [17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, 240.13b2-2, 240.14a-9 and 240.16a-3], and her liability as an aider and abetter of SafeNet's violations of Exchange Act Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B) and 14(a) [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Exchange Act Rules 10b-5, 12b-20, 13a-1, 13a-13, and 14a-9 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-13 and 240.14a-9].

The Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

The Commission asserts that venue is proper in the District of Columbia pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

### III.   MATTERS DISCUSSED BY THE PARTIES PURSUANT TO LOCAL RULE 16.3(c)

The parties have discussed the following matters in accordance with Local Rule 16.3(c) and the Court's Order:

**(1)   Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the court that discovery or other matters should await a decision on the motion.**

No dispositive motions have been filed in this case. Argo does not anticipate filing any dispositive motions at this time. On July 25, 2007, Argo was indicted by the United States

Attorney's Office for the Southern District of New York based upon the substantially the same acts which are the basis of the Commission's claims in this case. Argo is scheduled to appear in the United States District Court for the Southern District of New York on October 5, 2007, to enter a plea of guilty to the criminal charges against her. Argo's guilty plea may resolve certain legal and factual issues in this case.

> **(2)   The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

The parties agree that any other parties shall be joined within 60 days of the date of the Court's scheduling order.

> **(3)   Whether the case should be assigned to a magistrate judge for all purposes, including trial.**

The parties do not consent to proceed before a magistrate judge.

> **(4)   Whether there is a realistic possibility of settling the case.**

Prior to the filing the complaint in this case, the parties made several unsuccessful attempts to reach a settlement. Therefore, the parties agree that settlement is not likely at this time. However, the final resolution of the criminal charges against Argo will make settlement of this case much more likely.

> **(5)   Whether the case could benefit from the Court's alternative dispute resolution ("ADR") procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients.**

At this point, the parties believe it is premature to determine whether the case would benefit from ADR.  However, there is a possibility that the case may benefit from ADR following any disposition of the criminal matter.

**(6)    Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

The parties believe that this case cannot be resolved by a motion to dismiss.   As explained above, Argo's guilty plea to the criminal charges pending against her will obviate the need to establish certain legal and factual issues in this case and may render this case subject to resolution by summary judgment on those issues.  The parties agree that any motion for summary judgment should be filed within 30 days following any sentencing of Argo and the filing of any resultant criminal judgment, or, if discovery is deemed necessary, 30 days after the close of discovery, with oppositions due 14 days thereafter; and replies due 7 days after the date an opposition is filed.

**(7)    Whether the parties should stipulate to dispense with the initial disclosures required by Rule 26(a)(1), F. R. Civ. P., and if not, what if any changes should be made in the scope, form or timing of those disclosures.**

The parties do not stipulate to dispense with initial disclosures and have agreed that consistent with the Court's guidelines for Complex Cases and, assuming the Court enters a scheduling order, the initial disclosures should be exchanged by December 11, 2007– 60 days after the date of the initial scheduling conference.

**(8)    The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

The parties agree that because of Argo's intent to plead guilty to the criminal charges against her, and the likely effect of that plea upon the resolution of certain legal and factual issues in this case, the Court should not enter any order setting a schedule for discovery for a period of 90 days. If, at the end of that period, the criminal charges against Argo have not been finally resolved or settlement has not been reached, the parties may seek either an additional delay in discovery or request that the Court enter an order setting a discovery schedule.

In the event the Court believes it is necessary to enter a discovery scheduling order, the parties agree that the complexity of the facts and legal issues relating to the Commission's allegations against Argo, which span a period of five years, warrant designation of this case as complex. As a result of its investigation, the Commission has already identified 28 potential witnesses and received in excess of 1 million pages of documents. Consequently, the parties agree the Court should adopt the following discovery schedule, calculated from the date of the initial scheduling conference on October 12, 2007:

| | |
|---|---|
| Initial Disclosures: | December 11, 2007 (60 days) |
| Deadline for Post-R. 26(a) Discovery Requests: | January 10, 2007 (90 days) |
| Proponent's R. 26(a)(2) Statements: | April 12, 2007 (180 days) |
| Opponent's R. 26(a)(2) Statements: | June 12, 2007 (240 days) |
| All discovery closed: | July 12, 2007 (270 days) |
| Number of interrogatories per party: | 25 |
| Number of depositions per side: | 20 |

The parties do not believe entry of a protective order is appropriate at this time.

**(9)    Whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2), F.R.Civ.P., should be modified, and whether and when depositions of experts should occur.**

See paragraph 8 above. The parties agree that the depositions of any experts should be completed within 30 days of the date set in paragraph 8 for service of expert witness reports.

**(10)   Not Applicable**

**(11)   Whether trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

The parties do not believe of bifurcation of trial or discovery is necessary.

**(12)   The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

The parties agree that the pretrial conference should occur within 60 days after resolution of any motions for summary judgment.

**(13)   Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

The parties agree that the Court should set a trial date at the pretrial conference.

**(14)   Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.**

The parties agree that all motions *in limine* should be filed at least 14 days prior to the date of the pretrial conference.

Respectfully submitted,

| | |
|---|---|
| ___/s/ Jeannie Rhee___ | ___/s/ Jeffery T. Infelise___ |
| Jeannie Rhee (D.C. Bar #464127) | Jeffery T. Infelise (D.C. Bar #456998) |
| Peter K. Vigeland | Antonia Chion |

| | |
|---|---|
| Wilmer Cutler Pickering Hale & Dorr LLP<br>1875 Pennsylvania Ave., NW<br>Washington, D.C. 20006<br>Tel. (202) 663-6000 (Rhee)<br>Fax. (202) 663-6363<br>Jeannie.rhee@wilmerhale.com<br><br>Attorneys for Defendant | Yuri B. Zelinsky<br>Michael A. Ungar<br>Alton O. Turner<br>SECURITIES AND EXCHANGE COMMISSION<br>100 F Street, NE<br>Washington, DC 20549-4030<br>Tel: (202) 551-4904<br>Fax: (202) 772- 9362<br>infelisej@sec.gov<br><br>Attorneys for Plaintiff |

Dated: October 4, 2007

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 4, 2007.

                                          /s/ Jeannie Rhee
                                            Jeannie Rhee